UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JANE DOE,<br><br>**Plaintiff,**<br><br>*-against-*<br><br>UNITED STATES OF AMERICA and MARERLLIS NIX,<br><br>**Defendants.** | No.<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Jane Doe by and through her attorneys, Beldock Levine & Hoffman, LLP and Kallinen Law PLLC for her Complaint against Defendants identified herein, alleges as follows:

## PRELIMINARY STATEMENT

1.     Marerllis Nix ("Nix"), a former correctional recreation specialist at Federal Medical Center Carswell, in Fort Worth, Texas ("FMC Carswell") in the Northern District of Texas, exploited his position to sexually abuse women who were incarcerated at FMC Carswell in the custody of the United States Federal Bureau of Prisons ("BOP").

2.     Plaintiff was one of several incarcerated women that Nix sexually abused before he resigned from the BOP in 2021.

3.     Nix's recurrent abuse of incarcerated women was obvious to various agents, servants, and employees of the BOP, including but not limited to his supervisors and colleagues, who knew of and disregarded Nix's suspicious interactions with women in custody, including obvious violations of FMC Carswell's security, operating protocols, and the Prison Rape Elimination Act ("PREA"), including PREA regulations.

1

4.      BOP personnel deliberately ignored alarming warning signs including incarcerated people's sex abuse allegations against Nix.

5.      Upon information and belief, before Nix sexually abused Plaintiff, BOP supervisory and managerial employees were aware of prior allegations that Nix had sexually abused an incarcerated person in a BOP prison and at FMC Carswell.

6.      FMC Carswell is a federal prison which includes housing for incarcerated women with specialized medical and mental health needs.

7.      Despite the population of FMC Carswell being composed of especially vulnerable people, women with specialized medical and mental health needs, the BOP transferred Nix to FMC Carswell.

8.      It was only through the deliberate indifference, recklessness, carelessness, gross negligence, and negligence of other BOP personnel, that Nix's abuses could continue.

9.      Defendant Nix was permitted to take incarcerated women to areas of the prison without surveillance cameras, such as his office in the recreation area, without other corrections officers and his supervisors intervening—thereby enabling his ongoing sexual abuse of incarcerated women.

## JURISDICTION AND VENUE

10.      Plaintiff's claims are predicated upon the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, et seq., authorizing actions seeking relief against the United States.

11.      This Court has personal jurisdiction over Defendant because a substantial portion of the alleged incidents occurred within the confines of the State of Texas.

12.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and 1402 (b) as a substantial part of the events giving rise to Plaintiffs' claims occurred within the boundaries of this District.

## CONDITIONS PRECEDENT TO THIS LAWSUIT

13.     Plaintiff has complied with the requirements of 28 U.S.C. § 2675 by presenting an Administrative Claim against the United States of America, which was received by the BOP.

14.     This action is timely brought pursuant to 28 U.S.C. § 2401(b) in that it is begun within six months of the BOP's denial of Plaintiff's Administrative Claim.

## PARTIES

15.     At all times relevant herein, Plaintiff was an incarcerated person in the care and custody of the federal government at FMC Carswell.[1]

16.     Plaintiff was released from federal custody on or around January 2022 and currently resides in the United States.

17.     Defendant United States of America (hereinafter "United States") is the appropriate defendant for Plaintiff's claims under the FTCA.

18.     Defendant Marerllis Nix was an employee of the United States of America and employed with the Federal Bureau of Prisons.

19.     At FMC Carswell, Marerllis Nix was a recreation specialist.

20.     At all times relevant hereto, Defendant United States, acting through the BOP, was responsible for the operation, control, supervision, policy, practice, implementation, and conduct of all BOP matters including at FMC Carswell and was responsible for the hiring, retention,

---

[1] Plaintiff is proceeding under pseudonym to protect her privacy as a sexual assault victim. Plaintiff is prepared to file a motion to proceed under pseudonym, if required.

training, supervision, discipline, and conduct of all BOP personnel, including but not limited to the Nix and other BOP employees referenced herein.

21.    In addition, at all relevant times, United States was responsible for enforcing the rules of the BOP, and for ensuring that BOP personnel obey the Constitution and laws of the United States.

22.    The BOP employees referenced herein were agents, servants, and employees of Defendant United States, and acted within the scope of their employment, and were responsible for the day-to-day oversight, supervision, care, custody, and control of incarcerated people confined at FMC Carswell, including Plaintiff.

## JURY DEMAND

23.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues and claims in this action that are so triable.

## STATEMENT OF FACTS

24.    During her incarceration, Plaintiff was under the custodial care, supervision, and control of the agents, servants, employees, and independent contractors of Defendant United States and/or the BOP and/or BOP employees, including those named herein.

25.    As a matter of both State and Federal law, Defendant had an absolute non-delegable duty to see that incarcerated people in their custody receive adequate custodial care and supervision.

26.    Correctional personnel, including Nix, acting as agents for the BOP, had the responsibility to maintain the safety, health, and well-being of incarcerated people and to prevent incarcerated people such as Plaintiff from being subjected to undue harm.

27.    Correctional personnel abjectly failed to carry out this responsibility.

28.     FMC Carswell associate wardens, executive staff, department heads, supervisors, counselors, professional service providers and prison management were grossly negligent in the management, supervision and retention of male correctional officers at FMC Carswell who engaged in the sexual harassment and abuse of women in custody.

29.     When Jane Doe arrived at FMC Carswell, officials screened—or had a duty to screen—her for risk of sexual victimization to comply with PREA regulations.

30.     As PREA regulations establish that a history of sexual victimization puts people in custody at risk for further sexual victimization—and Jane Doe has previously experienced sexual victimization—FMC Carswell officials were aware she was at risk of victimization.[2]

31.     Nix sexually assaulted, sexually abused, and sexually harassed Jane Doe from mid-May 2021 to July 4, 2021.

32.     In mid-May 2021, while Jane Doe and other women in her unit were in recreation, Nix ordered Jane Doe to clean his office alone.

33.     FMC Carswell employee Potts (first name unknown)  heard Nix order Jane Doe to clean his office.

34.     When Jane Doe told Nix that she could clean his office the next day, as she normally cleaned with another incarcerated woman present, Nix ordered Jane Doe to clean the office now.

35.     Potts also heard Nix order Jane Doe to clean his office now.

36.     Potts did not intervene to prevent Nix from taking Jane Doe to an area of the prison without cameras, where she would be alone with Nix.

37.     Nix took Jane Doe to his office and watched her clean.

38.     Nix began talking to Jane Doe and told her that "temptation" is everywhere.

---

[2] "Screening for Risk of Sexual Victimization and Abusiveness," PREA Regulations §115.41.

39. Nix then took Jane Doe to the back door of his office and led her to the adjacent workout room.

40. Taking advantage of the power and authority conferred on him, and with express or implicit threat of retaliation if she reported the conduct, Nix made offensive, physical contact with Jane Doe.

41. Nix kissed Jane Doe.

42. When Jane Doe tried to leave, Nix grabbed her arm and threatened her that she could not tell anyone.

43. Nix then escorted Jane Doe to her unit and threatened that he would call her out of her unit that Sunday morning, where he would also be alone with her.

44. A few days later, Nix came to Jane Doe's unit and took her to a copy office to make copies of documents personal documents Nix described as his real estate class documents.

45. Nix then took Jane Doe to a supply closet without cameras and placed a cleaning cart in front of the closet door to further trap Jane Doe.

46. Nix pulled down Jane Doe's shorts and underwear and raped[3] Jane Doe through vaginal and oral penetration.

47. Nix then ejaculated onto the floor and ordered Jane Doe to wipe up his semen with a paper towel.

48. Nix escorted Jane Doe back to her unit.

49. Between mid-May and July 4, 2021, Nix raped Jane Doe several times in the workout room behind his office.

---

[3] Throughout the complaint, the term "rape" is used interchangeably with Texas's legal definition of "sexual assault," or sexual penetration without consent.

50.    Nix would retrieve Jane Doe from her cell and FMC Carswell correctional personnel would observe Jane Doe going to recreation alone with Nix and not intervene.

51.    Nix also raped Jane Doe in a shed and another building in the recreation yard.

52.    A lieutenant was monitoring the yard but did intervene to prevent Nix from being alone with Jane Doe in the shed and raping her.

53.    On another occasion, in the presence of Corrections Officer Coleman, Nix asked Jane Doe to bring popcorn to the outdoor recreation area outside of recreation hours. This was another tactic to isolate Jane Doe in an area of the prison without cameras and rape her. Coleman appeared suspicious and asked Jane Doe why she was being asked to take popcorn outside when there was no recreation happening. Coleman did not intervene to protect Jane Doe or prevent the abuse from happening, despite her suspicion.

54.    FMC Carswell correction employee Taylor, the head of recreation, observed Nix talking to Jane Doe and joined the conversation.

55.    In this conversation, Taylor heard Nix talk about how Nix had an "entanglement" with Jane Doe, which raised a suspicion of sexual abuse or harassment.

56.    Taylor did not report Nix or otherwise intervene to protect Jane Doe.

57.    Another employee, FMC correctional officer Brown observed Nix frequently asking for Jane Doe to be released from her unit to see him.

58.    Officer Brown was responsible for approving an incarcerated person's release from their unit.

59.    Officer Brown did not intervene and instead released Jane Doe whenever Nix asked for her.

60.    Jane Doe learned that Nix was sexually abusing other incarcerated women and spoke to Nix about this, to which he replied in sum and substance that people are "always accusing him" and adds "but nothing ever sticks."

61.    In one instance, Nix printed investigation paperwork from his email and showed Jane Doe that an incarcerated woman at Carswell had reported that he sexually abused her and that investigators at FMC Carswell were aware of this.

62.    Nix told Jane Doe that he was "always being accused by women."

63.    Nix made clear to Jane Doe that officials at Carswell would not punish him, noting that there were no cameras in the workout room and that "at the end of the day they're not going to do anything without proof" or something to that affect.

64.    FMC Carswell corrections officer Hunter (first name unknown) described Nix's sexual misconduct with people in custody as his "M.O." and that Nix had sexually abused people in custody at the federal prison where he worked prior to being transferred to FMC Carswell.

65.    Nix told Jane Doe that he was having sex with another incarcerated woman at FMC Carswell.

66.    Jane Doe was aware of this implication—that if she reported, officials within the BOP and FMC Carswell would not believe her and would instead believe Nix, who would deny the sexual abuse occurred.

67.    Jane Doe worked in the recreation area, and Nix was her supervisor.

68.    Although Jane Doe was afraid to explicitly report the abuse, Jane Doe went to Nix's supervisor—Lieutenant Luis Curiel.

69.    In an attempt to stop the abuse, Jane Doe asked Lieutenant Curiel to change her work assignment.

70. Jane Doe told Curiel that she was not happy at her job because she was not getting along with her boss.

71. Lieutenant Curiel did not ask Jane Doe further questions or help her in any way.

72. Instead, Lieutenant Curiel threatened Jane Doe to stay silent, telling her that he could put her in segregation if she feared for her safety.

73. Nix sexually assaulted Jane Doe on numerous occasions between May and July 4, 2021, at times weekly and at other times, more than weekly.

74. Nix himself even told Jane Doe that he believed other correctional staff at Carswell "were on to him," implying they were aware he was sexually abusing women in custody.

75. As Nix did not use a condom when sexually assaulting Jane Doe, Nix placed Jane Doe in fear that she had contracted a sexually transmitted infection.

76. In mid-July 2021, Jane Doe asking FMC Carswell Nurse Sancho to be tested for sexually transmitted infections.

77. Nurse Sancho ignored this request.

78. When Jane Doe asked again, Nurse Sancho again denied her request.

79. Jane Doe then reported the sexual abuse to Nurse Sancho.

80. After Jane Doe reported Nix, officials at FMC Carswell did not perform a forensic medical examination or any other pelvic examination, which violated PREA regulations and serves as another example of FMC Carswell protecting employees who commit sexual abuse.

81. Officials at FMC Carswell did not make a victim advocate from a rape crisis center or other community-based organization available for Jane Doe, which also violates PREA regulations and caused Jane Doe further harm.

82.     While Jane Doe was in restrictive housing, Officer Murphy (first name unknown) said "that bitch snitched on my homie," or something to that effect, in front of an incarcerated woman and other officers.

83.     Under PREA, Jane Doe and other women in BOP custody have the right to be free from retaliation for reporting sexual abuse and sexual harassment.

84.     Upon information and belief, several other incarcerated women received jewelry, including tongue and navel rings, from Nix, which raised suspicions that sexual abuse and harassment was occurring, yet BOP staff failed to comply with mandatory reporting obligations under the Prison Rape Elimination Act ("PREA").

85.     "[C]orrupt BOP staff use contraband to groom inmates for sex," which is sexual assault.[4]

86.     As a federal medical center, FMC Carswell is responsible for the care and custody of incarcerated women, including Plaintiff, vulnerable to sexual abuse.

87.     Staff at FMC Carswell created and maintained a sanctuary for male correctional employees to sexually abuse women in custody with impunity.

88.     Prior to Nix sexually abusing Plaintiff, other staff at FMC Carswell had sexually abused people in their custody in isolated areas, similar to Defendant Nix's pattern of behavior, but officials did not act to prevent further assaults.

89.     Defendant Nix was a known sexual predator to FMC Carswell's management team and BOP investigative agencies. Upon information and belief, Defendant Nix had been investigated on numerous occasions for sexually abusing people in custody. The FMC Carswell management team and BOP investigative agencies were well aware that people in custody were reluctant to

---

[4] https://oig.justice.gov/news/testimony/statement-michael-e-horowitz-inspector-general-us-department-justice-us-senate-0.

report sexual abuse for fear of retaliation, such as loss of privileges, transfer, disciplinary segregation, and loss of good time credit.

90.    Nix sexually abused another woman in custody on or about January 2021 after ordering her to go to the small room in the recreation area.

91.    BOP staff witnessed Nix order the woman to go to this isolated area of the prison without cameras and did not intervene.

92.    Given this, BOP correctional personnel knew that the existing FMC practices were ineffective in preventing correctional personnel from sexually abusing women in their care and custody.

93.    From 2012 to 2022, FMC Carswell had the highest number of cases of staff sexually abusing women in federal custody, substantiated through federal criminal prosecution, or BOP Office of Internal Affairs investigation. The number of victims totaled 22, which is substantially higher than other federal correctional facilities that house women. The only federal prison to nearly match FMC Carswell in number of victims is FCI Dublin, a federal prison that infamously hosted a "rape club" of correctional officers.

94.    Since 1997, at least 12 correctional personnel at FMC Carswell have been convicted of sexual abuse that occurred at FMC Carswell.

95.    In 2004, a jury found FMC Carswell correctional officer Michael Lawrence Miller guilty of 5 counts of assault, abusive sexual contact with a ward, abusive sexual contact, sexual abuse of a ward, and aggravated sexual abuse.

96.    In 2008, an FMC chaplain was sentenced to 4 years in prison for sexually abusing women in custody.

97.     From 2014 to 2018, FMC Carswell had the highest rate of sexual assault allegations against staff at any federal women's prison, with at least 35 women at Carswell reported that a staff member had sexually assaulted them.

98.     From 2012 to 2021, the BOP Office of Internal Affairs substantiated at least 16 cases of BOP staff sexually abusing women incarcerated at FMC Carswell, almost all before Nix raped Plaintiff.

99.     In 2016, BOP employee Matthew McGaugh began sexually abusing an incarcerated woman, C.D., who was in custody.

100.    BOP employee McGaugh was a case manager and committed sexual abuse when he had called C.D. into his office to discuss her mental health treatment plan.

101.    McGaugh sexually abused his victim in his office in a similar manner as Nix sexually abused Plaintiff—by putting a black piece of paper over the door window.

102.    C.D. reported him and faced swift retaliation.

103.    Other BOP officers called C.D. a "snitch" and a liar, would make her late for family visits, ransacked her locker, and kicked her bed at night.

104.    After filing an administrative complaint of retaliation, C.D. was transferred suddenly and not allowed to take her paperwork.

105.    Following this incident BOP supervisory official and other staff did not protect C.D. from retaliation or properly train and supervise BOP staff, which resulted in women in custody, including Plaintiff, being afraid to report sexual abuse.

106.    In March 2020, an incarcerated woman at FMC Carswell made a complaint that a corrections officer there had sexually assaulted her, and that officer remained on the unit.

12

107. In 2021, Defendant Nix's supervisor—Lieutenant Luis Curiel—sexually abused 3 women in isolated areas of the prison, including a staff elevator and stairwell next to the elevator.

108. In June or July 2021, a staff member reported Curiel to administrators.

109. Curiel was allowed to remain at work and sexually assault other incarcerated women in his custody until October 2021.

110. The staff member who reported Curiel was retaliated against and terminated.

111. Curiel plead guilty to two counts of sexual abuse of and admitted in the criminal prosecution that he had sexually abused three women in custody at FMC Carswell.

112. Another BOP correctional employee at FMC Carswell, William Walker, sexually abused at least one woman in his care and custody at Carswell.

113. Rather than terminate William Walker, the BOP moved him from FMC Carswell and promoted him to the position of Correctional Institution Administrator at a BOP facility in Texarkana.

114. One BOP staff member who had worked at FMC Carswell recently described the prison as "the perfect place for sexual misconduct." The staff member remained anonymous for fear of retaliation.

115. The culture of abuse at FMC Carswell perpetuated by BOP supervisory and non-supervisory staff caused Plaintiff to be sexually abused.

116. On information and belief, Defendant Nix confessed to BOP investigators at FMC Carswell that he sexually assaulted at least one incarcerated woman at FMC Carswell.

117. Supervisors and other correctional personnel at FMC Carswell retaliated against women who came forward to report correctional staff for sexual assault by placing them in the SHU

(special housing unit)—a housing unit with conditions akin to solitary confinement—and/or transferring them to another BOP facility.

118.    FMC Carswell is a federal medical center and prison for women exclusively.

119.    The BOP is aware that women entering prison, including Plaintiff, are more likely to have experienced sexual abuse prior to incarceration and in prison.

120.    It is a federal crime for BOP staff to knowingly engage in sexual acts with people under their custodial, supervisory, or disciplinary authority.

121.    The BOP purports to have a zero-tolerance policy for all forms of sexual activity, including abuse and harassment, as the PREA requires.

122.    The BOP's stated mission is to "protect public safety by ensuring that federal offenders serve their sentences of imprisonment in facilities that are safe, humane, cost efficient and appropriately secure."

123.    Despite its duty to care for women in custody and PREA, the BOP has instead created and maintained a sanctuary for male correctional employees to sexually assault and abuse women in custody. This sexual abuse is rampant, systemic, and largely unchecked due to a BOP culture that tolerates abuse, covers up abuse, and retaliates against those who report sexual abuse.

124.    This misconduct was recently reported by the U.S. House of Representatives for the Committee on Oversight and Government Report, which concluded that prison officials' misconduct is "largely tolerated or ignored altogether." According to the report, prison officials deemed responsible are often "shuffled around, commended, awarded, promoted or even allowed to retire with a clean record and full benefits before any disciplinary action could apply."[5]

---

[5] https://republicans-oversight.house.gov/wp-content/uploads/2019/01/Memo-to-Chairman-Russell-re-BOP.pdf.

125.    In 2022, the U.S. Senate Permanent Subcommittee on Investigations, Committee on Homeland Security and Governmental Affairs conducted an 8-month long bipartisan investigation concluding in a report, *Sexual Abuse of Female Inmates in Federal Prisons*,[6] released on December 13, 2022.

126.    PREA requires that the BOP provide reporting mechanisms for people in custody to make reports of sexual abuse.

127.    The subcommittee found system-wide failings of the BOP in protecting women incarcerated in federal prison.

128.    In several BOP prisons between 2012 and 2022, BOP staff wielded power and authority to sexually abuse numerous women under their custodial control.

129.    The subcommittee found the BOP's failure to enact PREA resulted in BOP staff sexually abusing numerous women.

130.    For instance, PREA audits consistently showed BOP prisons meeting or exceeding PREA standards, despite evidence of a culture of sexual abuse evident from numerous BOP staff being criminally prosecuted for sexual abuse of people in custody within those same BOP prisons that allegedly met standards.

131.    The BOP turned a blind eye and allowed the flawed PREA audits to continue—not preventing or exposing sexual abuse but only concealing it and suppressing reporting.

132.    The subcommittee surmised that given the fear of retaliation, and the apathy of BOP and DOJ officials at all levels to sexual abuse, the extent of abuse in BOP facilities is likely significantly wider.

---

[6] Sexual Abuse of Female Inmates in Federal Prisons, Staff Report Permanent Subcommittee on Investigations United States Senate, (Dec. 13, 2022), https://www.hsgac.senate.gov/imo/media/doc/2022-12-13%20PSI%20Staff%20Report%20-%20Sexual%20Abuse%20of%20Female%20Inmates%20in%20Federal%20Prisons.pdf.

133.    The subcommittee found the BOP did not systemically analyze PREA complaint data, and BOP Office of Internal Affairs ("OIA")—which investigates employee misconduct—has a backlog of 8,000 misconduct cases, leaving BOP staff employed and empowered to sexually abuse more women in their custody.

134.    The BOP failures have led to multiple BOP employees admitting in sworn statements that they sexually abused people in federal custody but being permitted to retire with benefits.

135.    To enact PREA and prevent sexual abuse, the BOP is required to train supervisory officials on preventing sexual abuse. These statements show high-level officials were not trained and not protecting people in their custody and care.

136.    In October 2022, Inspector General Horowitz issued a memorandum[7] to BOP Director Peters notifying her of "serious concerns" with how the BOP handles investigations of misconduct.

137.    The Office of the Inspector General discovered that the BOP OIA has a general practice of refusing to rely on testimony of people who are incarcerated to make misconduct findings and take disciplinary action, unless there is independent evidence, such as video, forensic evidence, or an admission from the employee.

138.    Such practices have resulted in BOP employees receiving little to no discipline for sexual abuse, allowing them to continue abusing more people in their custody until allegations are finally substantiated.

139.    This practice is a violation of PREA.

---

[7] Department of Justice Office of the Inspector General, *Management Advisory Memorandum 23-001 Notification of Concerns Regarding the Federal Bureau of Prisons' (BOP) Treatment of Inmate Statements in Investigations of Alleged Misconduct by BOP Employees*, (October 2022), https://oig.justice.gov/sites/default/files/reports/23-001.pdf.

140. In more egregious cases, the BOP had clear evidence of sexual abuse but viewed behavior as only an inappropriate relationship, despite PREA's zero tolerance policy.

141. People in custody have a constitutional right to be free from sexual abuse at the hands of BOP staff, as this is cruel and unusual punishment.

**FIRST CAUSE OF ACTION**
**NEGLIGENCE**
**Federal Tort Claims Act**
(*against the United States*)

142. Plaintiff adopts and incorporates by reference all preceding paragraphs as if said paragraphs are set forth fully herein.

143. Defendant United States, having a legal duty to Plaintiff as a prisoner in its care and custody to provide for the protection of inmates (18 U.S.C.S. § 4042), breached that duty in negligently operating and managing FMC Carswell by the above-described acts.

144. BOP employees breached their duties to Plaintiff by providing Defendant Nix with unrestricted and unsupervised one-on-one access to Plaintiff while incarcerated at FMC Carswell despite knowledge of his past sexual abuse and harassment of people in custody.

145. FMC Carswell management team and other correctional employees at FMC Carswell breached their duties to Plaintiff under PREA as follows:

   a. Section 115.61—failing to report suspicion of sexual abuse as it related to the conduct of Defendant Nix with incarcerated people including Plaintiff.

   b. Section 115.76 – failing to discipline staff, including Defendant Nix, for sexual misconduct.

146. The FMC Carswell management team and the BOP investigative agencies breached their duties to Plaintiff under BOP Program Statements as follows:

17

a.  Section 3340.11/12 – failing to report Defendant Nix's sexual abuse of Plaintiff and other people in custody, allowing Nix to continue his criminal assaults and harassment; failing to stop the sexual abuse of people in custody by Defendant Nix after notice and knowledge of prior assaults; and failure to train Defendant Nix on the Program Statements and procure his signature certifying same.

b.  Section 5324.12—failing to report the sexual abuse of Plaintiff and other people in custody by Defendant Nix; failing to timely intervene in response to allegations that Defendant Nix had sexually abused people in custody.

147.  As a direct and proximate cause of the negligence outlined above, the FMC Carswell management team, BOP investigative agencies, other correctional employees at FMC Carswell, and Defendant Nix caused damage to Plaintiff including psychological trauma, emotional distress, depression, physical trauma and pain and suffering.

148.  As a result of the negligence of Defendant United States, its agents, servants and employees, as aforesaid, Plaintiff has suffered extreme emotional harm, physical injury, loss of enjoyment of life, lost liberty, and lost income.

## SECOND CAUSE OF ACTION
### Sexual Assault
### Texas Common Law
### (*against Defendant Nix*)

149.  Plaintiff adopts and incorporates by reference all preceding paragraphs as if said paragraphs are set forth fully herein.

150.  Defendant Nix intentionally and knowingly subjected caused the penetration of Plaintiff's sexual organs without her consent.

151.  Defendant Nix intentionally and knowingly caused the penetration of Plaintiff's mouth with his sexual organ without her consent.

152.   As a result of Defendant Nix's conduct, Plaintiff suffered extreme emotional and physical harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jane Doe respectfully requests that judgment be entered against Defendants as follows:

a.   An award of compensatory damages for all past and future psychological and personal injuries, including but not limited to severe psychological and emotional injury, physical pain, fear, embarrassment, humiliation, shame, extreme emotional distress, loss of quality of life, violation of physical integrity, lost earning capacity, economic damages for all medical and counseling expenses, and other harm, in an amount to be determined at trial;

b.   An award of punitive damages in an amount to be determined at trial;

c.   An award of attorney's fees and costs to the fullest extent permitted by law; together with

d.   Such other and further relief as this Court may deem just and proper.

Dated:      March 6, 2024
            Houston, Texas

                              KALLINEN LAW PLLC

                              /s/ Randall L. Kallinen_____
                              Randall L. Kallinen
                              State Bar of Texas No. 00790995
                              511 Broadway Street
                              Houston, Texas 77012
                              Telephone:  713/320-3785
                              FAX:        713/893-6737
                              E-mail:     AttorneyKallinen@aol.com

Dated:      March 6, 2024
            New York, New York

                              BELDOCK LEVINE & HOFFMAN, LLP
                              99 Park Avenue, PH/26th Floor
                              New York, New York 10016

                              _____
                              David B. Rankin (pro hac vice forthcoming)
                              Regina Powers (pro hac vice forthcoming)
                              Telephone:  212-277-5825
                                          212-277-5892

19

E-mail:    drankin@blhny.com
          rpowers@blhny.com

20